UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM J. ROBLEDO,<br><br>                Plaintiff,<br><br>v.<br><br>F. ARMENTA, et al.,<br><br>                Defendants. | Case No.: 18-cv-00177-DMS-BGS<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br>**(ECF NO. 45)** |

      Plaintiff Adam J. Robledo, a state prisoner who self-identifies as a woman, is proceeding pro se and in forma pauperis. Plaintiff has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Pending before the Court is Plaintiff's Ex Parte Notice of Motion for "Emergency Protection" and Temporary Restraining Order ("TRO") pursuant to Federal Rule of Civil Procedure 65(a).

      Plaintiff seeks an order directing the California Department of Corrections and Rehabilitation ("CDCR")'s Undersecretary, Kathleen Allison, to "coordinate a safe transfer" away from the facility in which she is currently incarcerated, Richard J. Donovan Correctional Facility in San Diego ("RJD"), to a facility near her home[1] and where her next

---

[1] The Court notes that Plaintiff fails to state the location of her home.

of kin "can visit and verify if [she is] still alive." Plaintiff further seeks an order directing that she be reunited with her former cellmate, Zuri S.K. Young, who she claims provided her with safety and assisted her with pending litigation.

On December 7, 2018, Young engaged in a verbal exchange with a corrections officer and was subsequently transferred to another correctional facility. Plaintiff contends CDCR staff purposely separated Young to prevent him from assisting Plaintiff with this litigation and other pending cases against the corrections staff. Plaintiff claims this act was done in retaliation for the prior suits she filed against the facility staff. She also claims she was falsely charged with crimes such as "resisting," and that "C/O sponsored gang-members" and others were paid by CDCR staff "with [Plaintiff's and Young's] personal property" to "harm and murder [Plaintiff]." After Young was removed, corrections officers also removed his personal belongings. Plaintiff claims that personal property was used to "pay off" others who had been doing "dirty work" for one of the corrections officers. Plaintiff also asserts she was threatened by "2 to 3 Mexican STG's" who told her, "You should've never got involved with our business." Plaintiff, however, fails to provide any evidence in support of these allegations or details regarding how her safety and security have been threatened at RJD.

Federal Rule of Civil Procedure 65(a) generally provides that a court may issue a TRO only on notice to the adverse party. *See Bowell v. Schwarzenegger*, No. 6-02836, 2007 WL 1704211, at *1 (N.D. Cal. June 7, 2007); *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1248 (E.D. Wash. 2017). Rule 65(b) permits issuance of a TRO without notice but only if specific facts in an affidavit clearly show that immediate and irreparable harm will result if notice and an opportunity to respond are required, or if the movant certifies in writing that efforts were made to serve the adverse party with notice and that notice should be excused. *See Arellano v. Santos,* No. 18-02391, 2018 WL 6191389, at *6 (S.D. Cal. Nov. 28, 2018). Here, Plaintiff did not provide notice to Defendants, nor did she articulate why notice should not be required. *See Zepeda v INS*, 753 F.2d 719, 727 (9th Cir. 1983).

Additionally, Plaintiff has failed to show that immediate and irreparable harm would result if Defendants were provided such notice.

Notably, even if the Court were to overlook these deficiencies, Plaintiff's motion would still fail. "The purpose of a TRO is to preserve the *status quo* before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Rios v Strayhorn*, No. 17-00049, 2017 WL 2549727, at *1 (S.D. Cal. June 13, 2017). "The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction." *Id*. "In order to demonstrate the need for preliminary injunctive relief, a party must show: '1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases).'" *Garcia v. Smith,* No. 10-1187, 2010 WL 4054465, at *1 (S.D. Cal. Oct. 14, 2010) (citing *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). The Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, further requires that "prospective injunctive relief against a state prison system be 'narrowly drawn, extend [ ] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right.'" *Id.* at *1 (citing 18 U.S.C. § 3626). Plaintiff has not met the foregoing standard.

As an initial matter, Plaintiff has failed to show a likelihood of success on the merits. In a prior order, the Court granted Defendants' motion to dismiss Plaintiff's complaint, with leave to amend, (ECF No. 49), finding that Plaintiff's vague and conclusory allegations failed to state cognizable claims. (*Id.*) Further, Plaintiff seeks a TRO directing Defendants to transfer her to another corrections facility and reunite her with her former cellmate at that facility. However, prisoners do not have a constitutional right to be incarcerated at any particular institution. *Garcia*, 2010 WL 4054465, at *1 (citing *Olim v. Wakinekona*, 461 U.S. 238, 244–50 (1983)).

While prisoners do have a constitutional right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817 (1977), as well as a "right to receive assistance from other prisoners,"

3

those rights are "conditioned upon a showing that the inmate[] in question did not have adequate access to the court without the help of another prisoner." *Oster v. Clarke*, No. 7-5508, 2009 WL 279056, at *4 (W.D. Wash. Feb. 2, 2009) (internal citations and quotations omitted). Here, Plaintiff alleges that Young helped "about 10 other inmates with legal-work," and helped Plaintiff "successfully win all [her] cases." However, Plaintiff fails to assert that she does not have meaningful access to the courts without Young's assistance. Nor does the Court find that Plaintiff's access to the courts has been hampered by Young's absence. Indeed, after Young was transferred, Plaintiff was able to file the present motion, which includes recitation of pertinent procedural history and a detailed factual account. She also filed a proposed subpoena (ECF No. 47) and a motion to compel (ECF No. 51). Because Plaintiff neither alleges facts nor provides evidence to support a finding that she is unable to pursue this litigation on her own, Plaintiff's constitutional right of access to the courts has not been violated by the transfer of her "jailhouse lawyer." *See Buise v Hudkins*, 584 F.2d 223, 228 (7th Cir. 1978) ("[P]risoners are entitled to receive assistance from jailhouse lawyers where no reasonable alternatives are present and to deny this assistance denies the constitutional right of access to the courts.")

Plaintiff also contends that Young's rights were violated when false reports were made against him and he was transferred in violation of CDCR policy. To the extent Plaintiff seeks redress for purported violations of Young's rights, that claim fails—as pro se plaintiffs are prohibited from pursuing claims on behalf of others in a representative capacity. *See Simon v Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (collecting cases); *see also* ECF No. 9 at 3–4, fn.2. In addition, "prison officials have broad authority to transfer prisoners from one facility to another." *Chen v. Tilton*, No. 7-1780, 2007 WL 2695299, at 2 (E.D. Cal. Sept. 11, 2007). Plaintiff has therefore failed to demonstrate a likelihood of success on the merits.

Plaintiff has also failed to show irreparable harm. The claims of retaliation and threats of harm are speculative, lack specific detail and do not demonstrate immediate threatened injury. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th

Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."); *Chappell v. Stankorb*, No. 11-01425, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where prisoner's claims of injury based on current or future housing decisions were nothing "more than speculative."), *report and recommendation adopted*, No. 11-01425, 2012 WL 2839816 (E.D. Cal. July 9, 2012).

For the foregoing reasons, Plaintiff's motion is **DENIED.**

**IT IS SO ORDERED.**

Dated: April 11, 2019

Hon. Dana M. Sabraw
United States District Judge